**STATE, Plaintiff-Appellee, v. ALLGOOD, M. D., Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 4022. Decided December 15, 1959.

Thomas A. Beil, Pros. Atty., Clyde W. Osborne, Asst. Pros. Atty., Youngstown, for plaintiff-appellee.

John R. Hooker, Homer E. Carlyle, Youngstown, for defendant-appellant.

**OPINION**

Per CURIAM.

Defendant appeals to this court on questions of law from the judgment of conviction entered upon a jury verdict of guilty of performing an abortion upon Margaret Zuzulia upon an indictment laid under §2901.16 R. C.

The records of the Conemaugh Valley Memorial Hospital in Johnstown, Pennsylvania, disclose that complainant, Margaret Zuzulia, suffered a miscarriage there as the result of what was termed a "criminal abortion," which she testified was performed by defendant. There is no direct evidence of the use of an abortion producing instrument upon complainant by defendant.

Complainant testified that she took a series of steam baths to induce abortion; that the persons who administered them gave her defendant's name as a physician who would perform such an operation upon her; and that she had consulted a physician other than defendant.

Defendant, then practicing medicine in Mahoning County, unequivocally denied performance of such operation or use of drugs to induce miscarriage. Defendant admitted talking to complainant and asking

her "why don't you go out and marry the man"; advising her to have a blood test made to determine whether she was pregnant; telling her "that she might take quinine and castor oil and if she were pregnant she might menstruate"; and writing her a prescription for those drugs and an ergot derivative and for dehydrostreptomycin, a drug, to stop bleeding if she were not pregnant.

Defendant testified that upon attempting examination of complainant, in which he used a speculum, which he testified was used to dilate the vagina and could not produce abortion, to determine whether she was pregnant he met with so much pus in the vagina and area of the cervix of the uterus, which was eroded, that all he could do was pack her with cotton; and that he finally ordered her out of his office.

Defendant further testified that subsequently he refused to pay money to Joseph Marsico, with whom complainant admitted she had had illicit sexual intercourse over a considerable period of time.

Further defendant testified that at the time of the attempted vaginal examination the cervix of the uterus was swollen and red and so eroded he could not diagnose whether complainant was pregnant or had attempted self abortion.

In response to the question asked "well, did she go to any doctor there first," meaning, as shown by the evidence, in Indiana or Dilltown, presumably Pennsylvania, before consulting defendant, Joseph Marsico testified:—

"Well, I think she did, but they didn't know whether there was anything wrong. They probably give her something, and I don't know.

"I am not a doctor. I don't know what they gave her."

Counsel for defendant asked complainant:—

"Well, let me ask you this, Miss Zuzulia: due to your past conduct with Mr. Marsico, and the fact that you did not menstruate, that is, you missed one or two periods, you knew that you were probably pregnant, didn't you?"

Whereupon the following colloquy occurred between the trial judge and counsel, which defendant's counsel contend constituted "irregularity in the proceedings of the court below" which prevented defendant from having a fair trial:—

"A. I didn't know for sure, because I had been late before.

"Q. Had you gone and taken steam baths before?

"A. No.

"Q. And so you went and took the steam baths so that you would menstruate or at least have a miscarriage, didn't you?

"The Court: No, she didn't say that at all. You can ask her that question.

"Mr. Carlyle: It is perfectly obvious as to why she went, and I am simply asking her that.

"* * *

"Q. So that you were anxious then, were you, to have a miscarriage if you were pregnant?

"A. (No response.)

"The Court: Are you able to answer that? Do you understand it?

"A. Yes, but—

"The Court: But what? He asked you whether you were anxious to have a miscarriage if you were pregnant. Yes or no.

"A. Well, I will say yes.

"Q. All right. Now, being anxious as you were to have a miscarriage after you discovered your pregnancy, outside of taking steam baths to which you have already referred, what else did you do?

"The Court: Wait a minute. That question, I think, is unfair to the witness. She has not testified she did not take the steam baths until after some blood tests. You have it mixed in with outside of the steam baths. I think the question is confusing. Please restate it."

At this point the trial judge accused able respected counsel of misquoting testimony.

On cross-examination complainant testified, to which part of the colloquy defendant's counsel especially insists that the trial judge interferred to the extent of positively preventing defendant having a fair trial:—

"Q. Let me ask you, Miss Zuzulia: as the result of whatever you told the doctor who gave you the steam baths—

"The Court: No doctor gave her a steam bath. She hasn't testified that a doctor gave her a steam bath. She testified that the only doctor that was involved with her prior to meeting your client was a man who had a blood test taken.

"Mr. Osborne: I feel duty bound to straighten out the chronology of events here. First, she said she went to Dr. Allgood, then she went to Dr. Sloan, and then she went back to Dr. Allgood. The steam baths preceded any of this.

"The Court: I understand that. My only criticism now is of counsel saying that a doctor gave the steam baths. There is no such evidence in the record. So you can proceed.

"Mr. Carlyle: I recall a question at the beginning of my examination of this witness to the effect when I asked whether these people called themselves doctors, and it is my recollection that this witness testified that she thought they had.

"The Court: We will stop now. We will have the record searched. It is my recollection that that is not so. You will have to go back to the beginning of cross examinaion, Mr. Reporter, and read that.

"Mr. Osborne: I will withdraw any objection to that question, as far as I am concerned, rather than—

"The Court: I know—

"Mr. Osborne: If I may, rather than take the time of the reporter and the jury, I will let Mr. Carlyle ask her that. As far as I am concerned, I won't object to her being asked the question.

"The Court: I am the one who believes it was a misstatement on his part to say that she so testified. She testified she only saw one doctor other than Dr. Allgood, and that was the man who gave her the blood test. I remember no such testimony."

By brief counsel for defendant state:—

"If it were not for certain factors relating to the court's general charge, counsel for defendant would not be inclined to unduly criticize the

charge. However, when the court's charge is considered in connection with the proceedings in this case as a whole, prejudicial error is apparent. In the first place, the court, in his charge to the jury said:

"'If after a careful and entire comparison and consideration by you of all the evidence a reasonable doubt, as I have just defined it, exists in your minds as to the guilt of the defendant, it is your duty to acquit the defendant by a verdict of not guilty. On the other hand, if after a careful comparison and consideration of the entire evidence a reasonable doubt as so defined as to the defendant's guilt does not exist in your minds it is your unquestioned duty to return a verdict of guilty of the charge, as to the defendant concerning the charge.'"

Counsel for defendant question the correctness of the charge of duty to acquit and "unquestioned" duty to return a verdict of guilty, and contends that the trial judge went further than the forms prescribed by law of simply writing the word "not" into the form of acquittal and underscoring the words "not guilty" with one line and the word "guilty" with two lines.

In argument on the claimed error of the misconduct of the trial judge on trial and in overruling defendant's motion for a new trial counsel for defendant state:—

"Although it cannot be shown by the written record, the fact is and it is to an extent demonstrated by the colloquy that took place between the court and counsel for defense, during the hearing on the motion for a new trial, which is a part of the record, beginning on Page 224. The court pounded the bench, dismissed the jury, and then went so far as to tell Mr. Carlyle, one of the counsel for defense, that he should be disciplined. At this point, counsel for defense had the testimony stricken off, and presented it to the court."

Counsel for defendant claims the court should have instructed the jury the court was wrong; that counsel for defense had not misquoted the testimony of the witness, but that the court did not see fit to do so; and that it was not until much later in the trial after the state had rested that the court saw fit to make even a categorical admission of his error, and at that time the court said:—

"Ladies and gentlemen, before we proceed with the examination of Dr. Allgood, I want to correct a matter.

"We have had a stenographic report on something, and I want to call it to your attention. Mr. Carlyle, in cross examining the complaining witness here, Miss Zuzulia, asked: 'Let me ask you, Miss Zuzulia: as the result of whatever you told the doctor who gave you the steam baths:—Then I interrupted, and said: 'No doctor gave her a steam bath. She hasn't testified that a doctor gave her a steam bath. She testified that the only doctor that was involved with her prior to meeting your client was a man who had a blood test taken.'

"Now, I was superficially, I should say, incorrect, because here is what Miss Zuzulia had testified to in a prior part of her examination by Mr. Carlyle. Question: 'Were the steam baths given to you by a person or persons who called themselves doctors?' Answer: 'Well, she said—I think so. What is her name? I don't know her name.'

"Now, that is the record. The reason I said what I did was, I was

thinking of a doctor in the sense that Dr. Allgood is a doctor, and these three witnesses have been doctors of medicine. To that extent, I was right, but she did say, Miss Zuzulia, that this woman who gave her the steam baths called herself a doctor. I think that is sufficient. I want to correct any misimpression that I gave the jury. Go ahead.

"Mr. Carlyle. Thank you, Your Honor."

In the case of **State v. Lawrence, 162 Oh St 412,** the supreme court at **page 416** said:—

"Our state and federal governments have been divided into three separate departments, viz., the legislative, the executive and the judicial. Our forefathers wisely lodged the protection of the rights of free men in our judicial department. This protection can only be maintained by rigorously observing the limitations that restrain those in authority who would violate our sacred and constitutional guaranties. Judges must have a deep and reverent purpose to faithfully and impartially discharge the duties which rest upon them to the end that our free institutions will always be preserved and handed down unimpaired to our posterity.

"When counsel for the defense was presenting his case, the long established rules regarding the interrogation of witnesses were not observed as they should have been. It is not proper for a court, in a criminal case, to intervene when counsel is examining a witness on direct examination and, before such direct examination has been concluded, to cross-examine such witness on the assumption he is not telling the truth.

"Canon 15 of the Canons of Judicial Ethics, adopted by this court on January 27, 1954, provides in part:

"'A judge * * * shall bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.'

"The motives and integrity of the trial judge in any case that is or has been before this court are not and have not been in question. It is always assumed and granted that a trial judge's objective is to be impartial and that he endeavors 'to administer justice without respect to persons.' What is said herein, or what may have been said inadvertently in any previous opinion of this court, is not to be construed otherwise. A judge is to be commended for any determination displayed by him to enforce the law and to secure the truth. But in so doing, the long established rules of courtroom procedure in criminal cases must be followed, at least to the extent that the rights of a defendant will not be prejudiced thereby."

The burden was laid upon the state to prove beyond a reasonable doubt that defendant used upon complainant in Mahoning County a drug, or drugs, instrument or instruments, with intent to procure and did procure her miscarriage, which miscarriage was not necessary to preserve complainant's life.

The evidence that acts of the complainant and those of others than defendant caused complainant to abort without, as suggested by de-

fendant's counsel, "travelling too far into the realm of speculation" presented squarely a question for the determination of the jury. Notwithstanding we might have found otherwise in the state of the record we cannot interfere with the verdict of the jury on the ground that the verdict is not sustained by sufficient evidence.

Sec. 2945.83 R. C., in part provides:—

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:

"* * * (E) Any other cause unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

Considering the record as a whole we recognize many errors that occurred during the trial of this case, but we are unable to say that the accumulation of errors were of such a nature as to prevent the accused from having a fair trial, and for that reason the judgment of the trial court is hereby affirmed.

GRIFFITH, PJ, PHILLIPS and DONAHUE, JJ, concur.